**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASKARAN SINGH SINGH,<br><br>           Petitioner,<br><br>      v.<br><br>TONYA ANDREWS, et al.,<br><br>           Respondents. | Case No. 1:25-cv-01438-EPG-HC<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 14, 16, 17.) For the reasons stated herein, the Court grants the petition for writ of habeas corpus and directs Respondents to immediately release Petitioner.

**I.**

**BACKGROUND**

Petitioner is a native and citizen of India and entered the United States on or about December 21, 2023.[1] (ECF No. 1 at 1; ECF No. 18-1 at 5, 9.[2]) Petitioner entered the United

---

[1] The petition alleges that Petitioner entered the United States on December 23, 2023, but the Notice to Appear (Form I-862) and the Record of Deportable/Inadmissible Alien (Form I-213) indicate that Petitioner entered on December 21, 2023. (ECF No. 18-1 at 5, 9.)

[2] Page numbers refer to the ECF pagination stamped at the top of the page.

1

1  States without inspection and was briefly detained by the Department of Homeland Security
2  ("DHS") before being released on Alternative to Detention ("ATD") reporting requirements,
3  which required Petitioner to check in with Immigration and Customs Enforcement ("ICE") every
4  one or two months. On December 22, 2023, Petitioner was served with a Notice to Appear
5  ("NTA"), charging him as "an alien present in the United States without being admitted or
6  paroled, or who arrived in the United States at any time or place other than as designated by the
7  Attorney General" pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act
8  ("INA"). (ECF No. 18-1 at 5–7.)

9  Following his release from detention, Petitioner timely filed a Form I-589, Application
10 for Asylum, with the immigration court. (ECF No. 1 at 4.) On March 7, 2025, an immigration
11 judge ("IJ") issued an order finding Petitioner removable as charged in the NTA and designated
12 India as the country of removal, should removal become necessary. (ECF No. 18-1 at 3.) It
13 appears that Petitioner's asylum application may be set for a hearing on December 24, 2025.
14 (ECF No. 19 at 4.)

15 On or about January 31, 2025, Petitioner allegedly failed a virtual home visit. (ECF No.
16 18-1 at 3.) On September 25, 2025, Petitioner appeared for an appointment at the Office of
17 Enforcement and Removal Operations ("ERO") San Jose Intensive Supervision Appearance
18 Program ("ISAP") Office. At the appointment, Petitioner was unexpectedly taken into custody.
19 Petitioner was then transferred to the Golden State Annex in McFarland, California, where he is
20 currently housed. (ECF No. 1 at 2, 4; ECF No. 18-1 at 3.)

21 On October 28, 2025, Petitioner filed the instant petition for writ of habeas corpus,
22 challenging his detention and asserting violations of substantive due process, procedural due
23 process, and the INA. (ECF No. 1 at 7–9.) That same day, Petitioner also filed a motion for
24 temporary restraining order ("TRO"). (ECF No. 6.) On October 29, 2025, the Court denied the
25 motion for TRO. (ECF No. 10.) On November 26, 2025, Respondents filed an answer, and on
26 December 8, 2025, Petitioner filed a traverse. (ECF Nos. 18, 19.)
27 ///
28 ///

## II.

## DISCUSSION

### A. Statutory Basis of Petitioner's Detention

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings": 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). Respondents claim that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). (ECF No. 18 at 7). In Count Three of the petition, Petitioner asserts that "[a]pplication of 8 U.S.C. § 1225(b) to Petitioner is a violation of the INA because he is instead subject to discretionary detention under 8 U.S.C. § 1226(a)." (ECF No. 1 at 9).

8 U.S.C. § 1226(a) "is the default detention statute for noncitizens in removal proceedings." Avilez, 69 F.4th at 529. Detention under § 1226(a) "is discretionary" and "provides for release on bond or conditional parole." Id. The Supreme Court has described 8 U.S.C. § 1225 as follows:

> Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
>
> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not

> covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).
>
> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).
>
> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

Jennings v. Rodriguez, 583 U.S. 281, 287–88 (2018).

> Until this year, DHS has applied section 1226(a) and its regime of discretionary release and review of detention "to the vast majority of noncitizens allegedly in this country without valid documentation"—a practice codified by regulation. *Id.* As early as 1997, in the regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Immigration and Naturalization Service and the Executive Office for Immigration Review stated that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. at 10323. The government's briefing in this case acknowledges that its position historically was that section 1226(a) was "an available detention authority for aliens [present without being admitted or paroled] placed in full removal proceedings under § 1229a." (Dkt. No. 16 ("Opp.") at 12.)
>
> However, the government now disavows its prior position in light of subsequent "legal developments," including its 2025 designation "restor[ing] the scope of expedited removal to the fullest extent

Case 1:25-cv-01438-EPG   Document 20   Filed 12/12/25   Page 5 of 14

> authorized by Congress," 90 Fed. Reg. at 8139. (Opp. at 12.) It contends that section 1225 is "the sole applicable detention authority for *all* applicants for admission" and asserts that all applicants for admission are "subject to the mandatory detention framework" of section 1225(b). (Opp. at 12, 14.)

Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, 2025 WL 2741654, at *4 (N.D. Cal. Sept. 26, 2025) (footnote omitted).

"Here in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission.'" Valencia v. Chestnut, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (citing Lepe v. Andrews, No. 1:25-cv-01163-KES-SKO (HC), --- F. Supp. 3d ----, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); Rodriguez v. Kaiser, No. 1:25-cv-01111-KES-SAB (HC), 2025 WL 2855193 (E.D. Cal. Oct. 8, 2025); Ortiz Donis v. Chestnut, No. 1:25-cv-01228 JLT SAB, 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); Menjivar Sanchez v. Wofford, No. 1:25-cv-01187-SKO (HC), 2025 WL 2959274 (E.D. Cal. Oct. 17, 2025)). Contra Valencia, 2025 WL 3205133, at *2 (declining to follow said cases, finding "petitioner is unlikely to prevail on his statutory arguments," and denying temporary restraining order); Alonzo v. Noem, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284, at *3, 5 (E.D. Cal. Nov. 17, 2025) (finding that "[n]otwithstanding the majority view," petitioner failed to make "a sufficient showing of the likelihood of success on his statutory claim" yet noting "[t]his finding should not be understood an affirmative endorsement of the view that respondents' interpretation of § 1225(b)(2)(A) -- which is in line with the expansive understanding of mandatory detention applicability -- is correct" but rather "only that petitioner has failed to show a likelihood of success on it").

Additionally, "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States." Valencia, 2025 WL 3205133, at *2 (citing Garcia, No. 25-cv-02180-DMS-MMP, --- F.Supp.3d ----, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Martinez v. Noem, No. EP-25-CV-430 KC, 2025 WL 2965859 (W.D. Tex. Oct. 21, 2025) (acceptance of DHS's new interpretation represents "a minority view"); Buenrostro-Mendez v. Bondi, No. CV H-25-3726,

5

1  2025 WL 2886346 (S.D. Tex. Oct. 7, 2025)). Contra Chavez v. Noem, No. 3:25-cv-02325-CAB-
2  SBC, --- F.Supp.3d ----, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); Mejia Olalde v. Noem,
3  No. 1:25-cv-001568-JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025).

This Court will follow the majority approach in finding that "Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025). See Paz Aguilera v. Albarran, No. 1:25-cv-01619 JLT SAB, 2025 WL 3485016, at *9 (E.D. Cal. Dec. 4, 2025) ("acknowledg[ing] that two recent decisions in this district accepted Respondents' new interpretation of § 1225(b)(2)," but distinguishing those decisions because "unlike Petitioner, the petitioners in *Valencia* and *Alonzo* had never been encountered, let alone processed, by immigration officials, and had not been released on recognizance pending completion of Section 240 removal proceedings").

Based on the foregoing, the Court finds that the statutory basis of Petitioner's detention is 8 U.S.C. § 1226(a). Therefore, Petitioner is entitled to habeas relief on Count Three of the petition.

**B. Procedural Due Process**

In Count Two of the petition, Petitioner contends that his detention violates his procedural due process rights. (ECF No. 1 at 8.) Petitioner argues:

> As one court in this district recently noted, "numerous courts have observed, the initial decision to release petitioner under § 1226(a) precludes the government from later 'switch[ing] tracks' to subject him to mandatory detention under § 1225(b)(2) because petitioner's release created a 'reliance interest . . . so long as [petitioner] abided by the terms of [his] release.'"

(ECF No. 19 at 5 (quoting O.A.C.S. v. Wofford, No. 1:25-cv-01652-DAD-CSK (HC), 2025 WL 3485221, at *9 (E.D. Cal. Dec. 4, 2025)).

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second

6

examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted). The Court will address each step in turn.

1. Liberty Interest

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-

1  01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran,

2  No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez

3  Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal.

4  Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8

5  (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376,

6  at *7–8 (E.D. Cal. Aug. 8, 2025). Accordingly, the Court finds that Petitioner has a protected

7  liberty interest in remaining out of immigration custody.

      2.  *Mathews* Factors

    In Mathews v. Eldridge, 424 U.S. 319 (1976), the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

    Respondents argue that the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), *Rodriguez Diaz*, 53 F.4th at 1206 (citing Supreme Court cases), and the Court should not apply that test here." (ECF No. 18 at 20 n.3.) However, in Rodriguez Diaz v. Garland, 53 F.4th 1189 (9th Cir. 2022), which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v.*

*Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). Accordingly, the Court finds that applying the Mathews framework is appropriate.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). Here, Petitioner had been out of custody for approximately twenty-one months "in reliance on the government's previous representations that he was being released pending his removal proceedings. His detention denies him that freedom."[3] Sharan S., 2025 WL 3167826, at *10.

With respect to the second factor, "'the risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" J.A.E.M., 2025 WL 3013377, at *7 (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)). Respondents argue:

> The mandatory detention statute does not provide for release or bond hearings as demanded in the petition. Congress, in the INA, did, however, provided [sic] for the possibility of parole in the discretion of the agency. *See* 8 U.S.C. § 1182(d)(5). Due process requires no further relief than that already provided in these processes authorized by Congress.

(ECF No. 18 at 22.) However, as set forth in section II(A), *supra*, Petitioner is not subject to mandatory detention under § 1225(b). The statutory basis of Petitioner's detention is 8 U.S.C. § 1226(a), which provides for bond hearings and release on bond or conditional parole. "[A]s there have been no procedural safeguards to determine if petitioner's re-detention is justified,

---

[3] Respondents argue "Petitioner's mandatory detention during the limited duration of his removal proceedings comports with the Due Process Clause" because as of the date of the answer, "Petitioner has been in custody for 62 days, which is well below what the Supreme Court has said is presumptively reasonable in *Zadvydas v. Davis*, 533 U.S. 678 (2001)." (ECF No. 18 at 20, 21.) However, this case is not about prolonged detention but rather Petitioner's re-detention absent procedural protections.

1  'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" Sharan S.,
2  2025 WL 3167826, at *10 (quoting A.E., 2025 WL 1424382, at *5).

3  With respect to the third and final factor, "although the government has a strong interest
4  in enforcing the immigration laws, the government's interest in detaining petitioner without a
5  hearing is 'low.'" J.A.E.M., 2025 WL 3013377, at *7 (citing Ortega v. Bonnar, 415 F. Supp. 3d
6  963, 970 (N.D. Cal. 2019); Doe, 787 F. Supp. 3d at 1094). See Henriquez v. Garland, No. 5:22-
7  cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government
8  has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued
9  removal orders are promptly executed, the Government's interest in detaining Petitioner without
10 providing an individualized bond hearing is low."). Courts have found the cost of providing a
11 custody hearing is relatively minimal, and there is nothing in the record before this Court
12 demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively
13 burdensome. See J.A.E.M., 2025 WL 3013377, at *7 ("In immigration court, custody hearings
14 are routine and impose a 'minimal' cost." (citing Doe, 787 F. Supp. 3d at 1094)).

15 On balance, the Mathews factors show that Petitioner is entitled to a bond hearing and
16 "[t]hat hearing should have occurred before petitioner was re-detained." Carmen G.C. v.
17 Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec. 8,
18 2025).

> "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty ...."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

28 Carmen G.C., 2025 WL 3521304, at *7. At such a pre-deprivation hearing, the government bears

1  the burden of proving by clear and convincing evidence that Petitioner is a danger to the
2  community or a flight risk such that re-detention is warranted. See Martinez v. Clark, 124 F.4th
3  775, 784–86 (9th Cir. 2024) (confirming that the government bears the "clear-and-convincing
4  burden of proof" at an immigration bond hearing ordered pursuant to the Due Process Clause);
5  Carmen G.C., 2025 WL 3521304, at *7 ("On balance, the *Mathews* factors show that petitioner
6  is entitled to a bond hearing where the government must prove that she is a flight risk or danger
7  to the community by clear and convincing evidence."); J.E.H.G. v. Chestnut, No. 1:25-cv-01673-
8  JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release
9  reflected a determination by the government that the noncitizen is not a danger to the community
10 or a flight risk. Since it is the government that initiated re-detention, it follows that the
11 government should be required to bear the burden of providing a justification for the re-
12 detention.").

13    Based on the foregoing, the Court finds that Petitioner has a protected liberty interest in
14 remaining out of immigration custody and he was denied adequate procedural protections.
15 Therefore, Petitioner is entitled to habeas relief on Count Two of the petition.

16    **C.  Remedy**

17    Having found that Petitioner is entitled to habeas relief on Counts Two and Three of the
18 petition,[4] the Court now turns to the appropriate remedy. Petitioner requests that the Court order
19 him released from detention. (ECF No. 1 at 9; ECF No. 19 at 9.) In the alternative, Petitioner
20 requests the Court "direct a bond hearing at which time the burden of proof lies with DHS given
21 the gravity of the unconstitutional action and the fact that Petitioner was already once found not
22 to be a danger to the community or a risk of flight when it released him pursuant to ROR." (ECF
23 No. 19 at 9.)

24    Courts in this district have taken differing approaches to the relief granted to petitioners
25 who have been released, subsequently re-detained, and denied bond hearings based on the
26 government's new interpretation of 8 U.S.C. § 1225(b). In some cases, the immediate release of

---

[4] In light of this conclusion, the Court declines to address Count One of the petition.

the petitioner has been ordered. See, e.g., Yurani Hortua v. Chestnut, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who had been released from immigration detention on parole, was arrested for theft but the case was resolved with community service and did not result in a conviction, and was re-detained at a routine six-month check-in); Carmen G.C., 2025 WL 3521304 (ordering immediate release of petitioner who allegedly violated reporting requirements four times); Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention).

In other cases, bond hearings have been ordered rather than immediate release. See, e.g., J.E.H.G., 2025 WL 3523108 (ordering bond hearing for petitioner who allegedly violated reporting requirements numerous times and was re-detained based on said violations); Paz Aguilera, 2025 WL 3485016 (ordering bond hearing for petitioner who allegedly violated reporting requirements one time and was re-detained based on said violation); Sharan S., 2025 WL 3167826 (ordering bond hearing for petitioner who allegedly violated reporting requirements eight times).

Here, although Respondents briefly claim that Petitioner violated his terms of release by failing a virtual home visit on January 31, 2025,[5] (ECF No. 18 at 14), Respondents do not contend that Petitioner is a danger or flight risk based on this one alleged violation nor do Respondents assert that Petitioner's re-detention was initiated because of or warranted by this

---

[5] Petitioner declares that he "kept [his] phone charged, responded to all calls and messages, and ensured that [his] monitoring device was in working condition to the best of [his] knowledge." (ECF No. 19-1 at 2.) According to Petitioner, the "tracking/monitoring device provided to [him] frequently malfunctioned, including: Dropped GPS connection; failure to pair properly with the phone application; and app freezes and repeated error messages." (Id.) Petitioner further declares:
> No ICE officer or ISAP officer ever informed me that a virtual home visit was scheduled for January 31, 2025, or that I had failed one. I never received: A phone call, voicemail, text message, an in-app notification, or a written notice advising me that I was required to complete a virtual check that day.

(ECF No. 19-1 at 2.)

alleged violation, instead relying solely on their new interpretation of § 1225(b). Accordingly, the Court finds that Petitioner's immediate release is the appropriate remedy.

### D.  Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (ECF No. 1 at 9.) The EAJA provides in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
>
> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412 (d)(1)(A)–(B). The Court will consider an application from Petitioner requesting and substantiating reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

## III.

## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus (ECF No. 1) is **GRANTED**;
2. Respondents **SHALL IMMEDIATELY RELEASE** Petitioner Jaskaran Singh Singh from custody under the conditions of his most recent order of supervision;

13

3. Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice—describing the change of circumstances necessitating his arrest and detention—and a pre-deprivation hearing before a neutral decisionmaker. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present.

4. On or before Monday, December 15, 2025, Respondents SHALL file a status report to confirm that Petitioner has been released.

IT IS SO ORDERED.

Dated: **December 12, 2025**        /s/ Erica P. Grosjean
                                   UNITED STATES MAGISTRATE JUDGE

14